RICHARD SCHMIDT *v.* YARDNEY ELECTRIC CORPORATION ET AL.

(2832)

DUPONT, C.P.J., BORDEN and DALY, Js.

Argued February 15—decision released May 21, 1985

*Conrad O. Seifert,* for the appellant (plaintiff).

*Louis Ciccarello,* with whom, on the brief, was *Robert A. Fuller,* for the appellees (defendants).

BORDEN, J. In this case, we are called upon to decide whether the principle articulated by *Sheets* v. *Teddy's Frosted Foods, Inc.,* 179 Conn. 471, 427 A.2d 385 (1980), applies to the facts alleged by the plaintiff in the third and fourth counts of his complaint. We hold that it does, and that the plaintiff has stated viable causes of action in those counts.

The plaintiff's complaint is in six counts. The first and second counts purport to allege claims against his former employer, the defendant Yardney Electric Corporation (Yardney), and its parent corporation, the defendant Whittaker Corporation (Whittaker), respectively, based on the theory that they had breached an employment contract for an indefinite term by discharging him without just cause. The third and fourth counts purport to allege claims against the defendants based on a theory of the tort of wrongful discharge. The fifth and sixth counts purport to allege claims against the defendants based on a theory of the tort of negligent discharge.

The trial court granted the defendants' motion to strike the entire complaint, holding that none of the counts stated a valid cause of action. Judgment was rendered for the defendants when the plaintiff failed to replead. From that judgment, the plaintiff appeals. We find no error as to counts one, two, five and six; we find error as to counts three and four.

I

At oral argument in this court, the plaintiff conceded that the decision of the Supreme Court in *Magnan* v. *Anaconda Industries, Inc.,* 193 Conn. 558, 479 A.2d 781 (1984), precludes his claims under the first and second counts. In that case, the court declined "to enlarge

the circumstances under which an at-will employee may successfully challenge his dismissal beyond the situation where the reason for his discharge involves 'impropriety . . . derived from some important violation of public policy.' " Id., 572.[1]

The plaintiff's claims under the fifth and sixth counts essentially mirror those under the first and second counts, with two exceptions: The theory shifts from breach of contract by wrongful discharge to the tort of wrongful discharge; and the basis of the claim shifts from discharge without just cause to negligent discharge. The allegations of negligence are that the defendants discharged the plaintiff without stating a reason, without giving him timely and adequate prior notice, without giving him a pink slip, without giving him severance pay, without telling him of the changed status of his life insurance, disability and stock options upon termination, and by using a policy manual that had not been used before rather than following a previously established course of conduct. The shift from a contract to a tort theory is immaterial, since "[w]hether a claim resulting from . . . a discharge [of an at-will employee] is framed in tort or in contract should make no difference with respect to the issue of liability." *Magnan* v. *Anaconda Industries, Inc.*, supra, 572. The

---

[1] We note that, after alleging an oral employment contract for an indefinite term, the plaintiff alleged that "[t]he aforesaid contract gave rise to a reasonable expectation on the part of the Plaintiff that he would not be discharged in the absence of just cause, and that he would enjoy a bright future with unlimited opportunity in Defendant Yardney's company." While this allegation arguably could have supported a cause of action; see *Magnan* v. *Anaconda Industries, Inc.*, 193 Conn. 558, 564–65, 572, 479 A.2d 781 (1984) (implied promise to discharge only for cause may arise when an employee, in reliance on an implied representation that his employment will not be arbitrarily terminated, acts in reasonable and significant reliance on the representation); we also note that the plaintiff's concession encompassed this allegation, he placed no reliance on it in his brief or oral argument in this court, and there is no allegation in the complaint of such reasonable and significant reliance. We therefore consider that he has abandoned any such claim.

plaintiff's allegations of negligence set forth an a fortiori case with respect to the holding of *Magnan* v. *Anaconda Industries, Inc.*, supra. We therefore conclude that counts five and six do not state causes of action.

## II

This leaves for analysis the principal issue in this case: Whether the plaintiff's allegations in the third and fourth counts state causes of action under *Sheets* v. *Teddy's Frosted Foods, Inc.*, supra. That case held that a discharged at-will employee may sue for the tort of wrongful discharge "if the former employee can prove a demonstrably *improper* reason for dismissal, a reason whose impropriety is derived from some important violation of public policy." (Emphasis in original.) Id., 475; *Magnan* v. *Anaconda Industries, Inc.*, supra.

The third count, directed against Yardney, alleges essentially as follows: In April, 1965, Yardney hired the plaintiff as a salaried employee under an oral employment contract for an indefinite term. From that time through May, 1982, the plaintiff was continuously employed by Yardney, and during that period he secured a number of promotions, ultimately achieving the position of vice-president of operations. His employment with Yardney is of great importance to him, affecting his home, family life and standing in the community.

That count further alleges that in May, 1982, Yardney terminated his employment without just cause. At that time, he had an annual salary of $35,000, with vested pension rights and stock options. This discharge was a willful, malicious, and vindictive act by Yardney, in that it was done because of the plaintiff's cooperation with investigators of Whittaker, Yardney's parent corporation, arising out of the following series of events: In June, 1979, some Yardney molds had been

slightly damaged by a fire. Yardney's president ordered the plaintiff to falsify an insurance claim by grossly exaggerating Yardney's losses by the amount of approximately $350,000. By being ordered to participate in this falsified claim, the plaintiff's health deteriorated seriously, causing him to go on a medical leave of absence in January, 1981. At that time, Yardney told him that his position was secure and would be waiting for him on his return.

This count alleges further as follows: In April, 1982, company auditors of Whittaker contacted the plaintiff for the express purpose of questioning him about the falsified insurance claim. He fully disclosed his knowledge about the falsified claim to the auditors. By May, 1982, his cooperation with the Whittaker auditors was communicated to the officers of Yardney, and he was discharged in retaliation for that cooperation. All the other Yardney employees who similarly cooperated with the auditors were terminated as well. As a result of Yardney's willful and malicious actions, the plaintiff suffered economic and personal losses.

The fourth count, directed against Whittaker, repeats the allegations of the third count, and adds that Yardney is a subsidiary of Whittaker, that the plaintiff held vested pension rights and stock options in Whittaker by virtue of his employment with Yardney, that the two corporations share common directors, that in dismissing him Yardney was acting as Whittaker's agent, and that Whittaker approved, condoned and ratified Yardney's actions. Neither side questions that, if the plaintiff has stated a cause of action against Yardney in the third count, he has also stated sufficient facts to pierce the corporate veil between the two, on the fourth count. See *Angelo Tomasso, Inc.* v. *Armor Construction & Paving, Inc.*, 187 Conn. 544, 447 A.2d 406 (1982).

It is axiomatic that, in passing on a motion to strike based on a claim of failure to state a cause of action, we must take the facts alleged favorably to the pleader and view those facts in a broad fashion, not strictly limited to the allegations, but also including the facts necessarily implied by and fairly provable under them. *Amodio* v. *Cunningham,* 182 Conn. 80, 83, 438 A.2d 6 (1980); *Alarm Applications Co.* v. *Simsbury Volunteer Fire Co.,* 179 Conn. 541, 545, 427 A.2d 822 (1980); *Shelby Mutual Ins. Co.* v. *Della Ghelfa,* 3 Conn. App. 432, 444–45, 489 A.2d 398 (1985); *Greene* v. *Metals Selling Corporation,* 3 Conn. App. 40, 41–42, 484 A.2d 478 (1984). Under this standard, counts three and four pass muster.

The allegations necessarily implied and the plaintiff could fairly prove under those allegations that the fraudulent insurance claim was presented to and paid by Yardney's insurer, and that his motivation in cooperating with the auditors was, at least in part, to help redress the fraud in which he participated on orders of Yardney's president. His allegations imply, in this connection, that Yardney desired to keep that fraud a secret and that his dismissal was in retaliation for helping to bring it to light.

This would, we believe, allow proof that the plaintiff's dismissal involved impropriety derived from some important public policy. *Magnan* v. *Anaconda Industries, Inc.,* supra; *Sheets* v. *Teddy's Frosted Foods, Inc.,* supra. The important public policy we identify is the one against fraud, which is deeply rooted in our common law; see *Broome* v. *Beers,* 6 Conn. 198, 210–12 (1826); and in our criminal statutes. See, e.g., General Statutes § 53a-119 (2) (obtaining property by false pretenses).[2] In addition, to the extent that the falsified

---

[2] As in *Sheets* v. *Teddy's Frosted Foods, Inc.,* 179 Conn. 471, 427 A.2d 385 (1980), "[w]e need not decide whether violation of a state statute is invariably a prerequisite to the conclusion that a challenged discharge vio-

claim filed by Yardney constituted a crime, Yardney's retaliatory dismissal of the plaintiff contravened the public policy in favor of encouraging citizens "to raise the 'hue and cry' and report [crimes] to the authorities." *Branzburg* v. *Hayes,* 408 U.S. 665, 696, 92 S. Ct. 2646, 33 L. Ed. 2d 626 (1971); see General Statutes § 31-51m (protection of employee who discloses employer's illegal activities to public body).

The defendants argue in effect that the plaintiff was dismissed, not in retaliation for disclosing the fraud, but because it was discovered that he had participated in it. While that version of events may, upon a trial, prevail as a matter of fact, the defendants' argument ignores the rule that on a motion to strike the plaintiff's allegations must be taken in his favor, not to his detriment. The plaintiff alleged in effect that he was dismissed in retaliation for disclosing the fraud, not because he participated in it.

There is error in part, the judgment is set aside as to the third and fourth counts of the complaint, and the case is remanded for further proceedings on those counts.

In this opinion the other judges concurred.

---

lates public policy. Certainly when there is a relevant state statute we should not ignore the statement of public policy that it represents." Id., 480.