[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON MOTION TO STRIKE
The defendant moves to strike count two of plaintiffs' substitute amended complaint which alleges a claim for bystander emotional distress.
Plaintiffs Leonard and Laurie Oberg filed a two-count substitute amended complaint dated March 18, 1991, against the defendant Roman Niebielski. The first count is brought by plaintiff Leonard Oberg and alleges negligence. The second count is brought by plaintiff Laurie Oberg and alleges a claim for bystander emotional distress.
In count two, plaintiff Laurie Oberg alleges the following facts. On or about July 8, 1986, Laurie and Leonard Oberg were lessees of the second floor of a multi-family dwelling owned by defendant Roman Niebielski. (Complaint, paras. 1, 2, p. 1). Plaintiff Laurie Oberg alleges that defendant also rented other portions of said dwelling to Alan and Joseph Rodrique. (Complaint, paras. 3, 4, p. 1). On or about July 8, 1986, Leonard Oberg was in a common area of the defendant's dwelling when he was assaulted by Alan and Joseph Rodrique with a baseball bat, thereby suffering CT Page 2075 severe personal injuries and losses. (Complaint, para. 5, pp. 1-2). Plaintiff Laurie Oberg alleges that Leonard Oberg's injuries were caused by the negligence of the defendant. (Complaint, para. 6, p. 2). Plaintiff further alleges that she was present during the assault and, as a result, suffered severe emotional distress. (Complaint, paras. 7, 8, pp. 4-5).
On May 21, 1991, pursuant to Practice Book 151 et seq., defendant filed a motion to strike count two of plaintiffs' substitute amended complaint, accompanied by a memorandum of law in support thereof. Defendant moved to strike count two on the grounds that (1) Connecticut does not recognize a cause of action for bystander emotional distress, and (2) even if Connecticut does recognize bystander emotional distress as a cause of action, plaintiff failed to allege facts sufficient to support such a cause of action.
On June 5, 1991, plaintiff filed a memorandum of law in opposition to defendant's motion to strike. On June 24, 1991, defendant filed a memorandum of law in response to plaintiff's memorandum in opposition.
On October 22, 1991, the court (Hennessey, J.) denied defendant's motion to strike in accordance with a prior ruling by Judge Koletsky on April 15, 1991 denying an identical motion to strike brought by the defendant.
On November 4, 1991, defendant moved the court to reconsider its October 22, 1991 ruling. The court denied the motion for reargument and reconsideration on November 20, 1991. On December 16, 1991, defendant moved the court to further reconsider its October 22, 1991 and November 20, 1991 rulings. Defendant maintained that the court file did not accurately report Judge Koletsky's April 15, 1991 ruling on defendant's motion to strike. The court asked the defendant to secure a copy of the transcript. While the court file reflects a denial of the motion to strike by Judge Koletsky, the transcript of the April 15, 1991 proceedings revealed that Judge Koletsky ordered that the motion to strike be marked off the calendar and refiled. Accordingly, this court (Hennessey, J.) heard argument on the merits of defendant's May 21, 1991 motion to strike at short calendar on December 30, 1991.
The function of a motion to strike is "to test the legal sufficiency of a pleading." Alarm Applications CT Page 2076 Co. v. Simsbury Volunteer Fire Co. 179 Conn. 541, 545,427 A.2d 822 (1980). A motion to strike "admits all facts well pleaded." Mingachos v. CBS, Inc., 196 Conn. 91,108, 491 A.2d 368 (1985). (Emphasis in original). "The court must construe the facts in the complaint most favorably to the plaintiff." Gordon v. Bridgeport Housing Authority, 208 Conn. 161, 170, 544 A.2d 1185
(1988).
"In deciding upon a motion to strike. . ., a trial court must take the facts to be those alleged in the complaint;" (citations omitted); "and `cannot be aided by the assumption of any facts not therein alleged.'" Liljedahl Bros., v. Grigsby, 215 Conn. 345, 348,576 A.2d 149 (1990), quoting Fraser v. Henninger, 173 Conn. 52,60, 376 A.2d 406 (1977). (Emphasis added).
In his memoranda of law in support of his motion to strike, defendant argues that (1) Connecticut does not recognize a cause of action by a bystander for emotional distress, and (2) even if such a cause of action were recognized in Connecticut, plaintiff has failed to allege sufficient facts to support a close relationship between herself and the injury victim as required by both Dillon v. Legg, 68 Cal.2d 728, 69 Cal.Rptr. 72,441 P.2d 912 (1968), and Thing v. LaChusa, 48 Cal.3d 644,257 Cal.Rptr. 865, 771 P.2d 814 (1989). (Defendant's Memorandum in Support, pp. 2, 10; Defendant's Memorandum in Response, p. 2). Defendant cites Elden v. Sheldon, 46 Cal.3d 367,250 Cal.Rptr. 254, 758 P.2d 582 (1988), for the proposition that an unmarried person cohabitating with another cannot recover for bystander emotional distress resulting from witnessing the injury and death of the cohabitant. (Defendant's Memorandum in Support, pp. 11-12; Defendant's Memorandum in Response, p. 4).
Plaintiff responds, in her memorandum of law in opposition to the motion to strike, that Connecticut does recognize bystander emotional distress claims, and that plaintiff has alleged a legally sufficient cause of action for bystander emotional distress under both Dillon, supra, and Thing, supra. (Plaintiff's Memorandum in Opposition, pp. 4-17)
The leading cases in Connecticut which address the viability of a claim by a bystander for emotional distress are Strazza v. McKittrick, 146 Conn. 714,156 A.2d 149 (1959), Amodio v. Cunningham, 182 Conn. 80,438 A.2d 6 (1980), and Maloney v. Conroy, 208 Conn. 392, CT Page 2077545 A.2d 1059 (1988).
In Strazza, supra, a plaintiff mother sought recovery for emotional distress she allegedly suffered as a result of fearing injury to herself and her son when a truck crashed into her rear porch. The Connecticut Supreme Court held that while plaintiff was entitled to recover for emotional distress caused by the fear of injury to herself, "there can be no recovery for nervous shock and mental anguish caused by the sight of injury or threatened harm to another." Strazza, supra, 719.
In the 1980 medical malpractice case of Amodio, supra, a plaintiff mother sought recovery from defendant physicians for emotional distress she allegedly suffered as a result of witnessing her child's death. The Connecticut Supreme Court thoroughly discussed the California case of Dillon v. Legg, supra, which recognized a cause of action for bystander recovery for emotional distress caused by the negligent infliction of injury upon a third person. However, the court did not explicitly adopt Dillon and stated that "even were we inclined to adopt the approach taken in Dillon and the cases relying thereon, the complaint in the present case would nonetheless fail to state a cognizable cause of action." Amodio, supra, 92.
Finally, in the 1988 malpractice case of Maloney, supra, plaintiff sought recovery for emotional distress she allegedly suffered from observing her mother's health deteriorate under the care of defendants. The Connecticut Supreme Court held that "we are not inclined to follow the lead of the California courts in allowing a bystander to recover for emotional disturbance resulting from malpractice upon another person that a bystander may have observed." Maloney, supra, 397. The court further stated that "[w]hatever may be the situation in other contexts where bystander emotional disturbance claims arise, we are convinced that, with respect to such claims arising from malpractice on another person, we should return to the position we articulated in Strazza. . . ." Id., 402.
Connecticut Superior Court decisions have interpreted these leading cases to both allow bystander emotional distress claims, see, e.g., Short v. Connecticut, 4 CTLR 94 (May 13, 1991, Schimelman, J.); Salvadori v. Rivera, 4 CTLR 20 (May 2, 1991, Lewis, J.); Lawrence v. Sniffen, 3 CTLR 354 (February 21, 1991, CT Page 2078 Ryan, J.); Robson v. Schoenster, 3 CTLR 351 (February 21, 1991, Ryan, J.); Trapp v. W.H. Co-op Marina,3 CTLR 49 (December 18, 1990, Schimelman, J.); Spencer v. Colby, 3 CSCR 276 (February 2, 1988, Hennessey, J.), and to bar bystander recovery for emotional distress, see, e.g., Silva v. Carlson, 5 CTLR 433 (January 9, 1992, Mihalakos, J.); Messina v. Vellafonck, 5 CTLR 329
(December 11, 1991, Gray, J.); Carter v. Shaw,5 CTLR 248 (November 25, 1991, Fracasse, J.); Uricheck v. Amazing Stores, Inc., 4 CTLR 416 (July 31, 1991, Murray, J.); Belanger v. Glastonbury, 3 CTLR 623 (April 22, 1991, Freed, J.).
While the Connecticut Supreme Court in Amodio and Maloney did not expressly adopt the Dillon decision, both cases discussed the three factors enunciated in Dillon which must be satisfied in order for a plaintiff to be able to recover under a bystander emotional distress theory:
 `(1) Whether plaintiff was located near the scene of the accident as contrasted with one who was a distance away from it.
 (2) Whether the shock resulted from a direct emotional impact upon plaintiff from the sensory and contemporaneous observance of the accident, as contrasted with learning of the accident from, others after its occurrence.
 (3) Whether plaintiff and the victim were closely related, as contrasted with an absence of any relationship or the presence of only a distant relationship.'
Maloney, supra, 395-96, quoting Dillon v. Legg, supra, 740-41; see also Amodio, supra, 88-89. The three Dillon factors aid in determining "whether the injury to the plaintiff was reasonably foreseeable and thereby gives rise to a duty of care owed by the defendant." Amodio, supra, 88.
In 1989, the California Supreme Court explained and refined the Dillon test in the case of Thing v. LaChusa, supra. The court in Thing, supra, held that
 a plaintiff may recover damages for emotional distress caused by observing the inflicted injury of a third person if, but only if, said plaintiff: (1) is closely related to the CT Page 2079 injury victim; (2) is present at the scene of the injury producing event at the time it occurs and is then aware that it is causing injury to the victim; and (3) as a result suffers serious emotional distress — a reaction beyond that which would be anticipated in a disinterested witness and which is not an abnormal response to the circumstances.
Id., 829-30. The Dillon factors, as refined by Thing, constitute the necessary elements of a bystander emotional distress claim.
In the case at bar, plaintiff Laurie Oberg alleges, in count two, that defendant "leased the second floor [of this multi-family dwelling] to the plaintiff's [sic] Leonard and Laurie Oberg." (Complaint, para. 2, p. 1, as incorporated into count two). In reviewing the allegations of the complaint, the court "must take the facts alleged favorably to the pleader and view those facts in a broad fashion, not strictly limited to the allegations, but also including the facts necessarily implied by and fairly provable under them." Schmidt v. Yardney Electric Corporation, 4 Conn. App. 69, 74,492 A.2d 512 (1985).
A review of the allegations of count two of the complaint reveals that plaintiff Laurie Oberg and the injury victim, Leonard Oberg, have the same last name, and Laurie and Leonard Oberg were lessees of the same residence. This court finds that the above stated facts are sufficient to imply a close relationship between the plaintiff and the injury victim.
Accordingly, defendant's motion to strike count two is denied.
MARY R. HENNESSEY, JUDGE