UNITED ELECTRICAL CONTRACTORS, INC. *v.*
PROGRESS BUILDERS, INC., ET AL.
(10261)

DUPONT, C. J., NORCOTT and FOTI, Js.

---

Argued December 13, 1991—decision released February 25, 1992

*George E. Mendillo,* for the appellant (plaintiff).

*Richard Bruno,* for the appellees (defendants Jane Z. Mahler and Keith S. Mahler).

NORCOTT, J. The plaintiff in this contract action appeals from the trial court's judgment in favor of the defendants Keith S. Mahler and Jane Z. Mahler.[1] The plaintiff claims (1) that the trial court improperly failed to find certain facts, (2) that one of the defendants tortiously interfered with contractual relations between the plaintiff and another of the defendants, (3) that an admission in the defendants' answer is binding on all the defendants, and (4) that a certain conveyance of property is void as to the plaintiff. We affirm the judgment of the trial court in part, and reverse it in part.

The following uncontroverted facts are relevant to this appeal. The plaintiff brought this action to recover

---

[1] Also named as defendants in the trial court were Progress Builders, Inc., and Edgecliffe Lawn Development Corporation. The judgment against these defendants is not at issue in this appeal.

money owed to it for electrical work performed between October, 1988, and June, 1989, under a contract with the defendant Progress Builders, Inc. (Progress), a general contractor. The plaintiff performed the work in connection with the construction of a house on a Waterbury lot owned by the Edgecliffe Lawn Development Corporation (Edgecliffe). Keith S. Mahler is the president, and a director and stockholder of both Progress and Edgecliffe. He also is the husband of Jane Z. Mahler.

In March, 1989, Edgecliffe transferred the lot to Jane Z. Mahler. Later, when Progress, through Keith S. Mahler, declined to make payment for the plaintiff's services, this action was commenced. In its complaint, the plaintiff alleged breach of contract as to Progress and Edgecliffe, fraudulent conveyance as to Edgecliffe and Jane Z. Mahler, unjust enrichment as to Jane Z. Mahler, and intentional interference with contractual rights as to Keith S. Mahler. The complaint's fifth count alleged that Edgecliffe's transfer of the property to Jane Z. Mahler lacked adequate consideration and was made with the intent to defraud the plaintiff of its indebtedness. The defendants admitted this allegation in their answer, denying only that consideration was inadequate.

The trial court rendered judgment against Progress and Edgecliffe each in the amount of $9427.41 for breach of contract, and against Edgecliffe in the amount of $4125 as punitive damages. Judgment was rendered in favor of the Mahlers as to the counts against them. This appeal followed.

The plaintiff claims that Edgecliffe is the agent of Progress, that Keith S. Mahler intentionally refused to permit Progress and Edgecliffe to pay the plaintiff, and that Jane Z. Mahler is liable to the plaintiff on a theory of unjust enrichment and fraudulent conveyance.

In support of these assertions, the plaintiff first claims that the trial court improperly failed to find certain facts, the essence of which are that Keith S. Mahler controlled both Progress and Edgecliffe, and that he made a fraudulent affidavit in order to enable Jane Z. Mahler to obtain financing to purchase the lot, which resulted in the plaintiff's being defrauded of its indebtedness. We agree.

When the factual basis of a trial court's decision is challenged, it is this court's function to "determine whether the facts set out in the memorandum of decision are supported by the evidence or whether, in light of the evidence and the pleadings in the whole record, those facts are clearly erroneous." *Pandolphe's Auto Parts, Inc.* v. *Manchester,* 181 Conn. 217, 221–22, 435 A.2d 24 (1980); *State* v. *Milton,* 26 Conn. App. 698, 705, 603 A.2d 750 (1992). We do not, however, retry the facts. *Nor'easter Group, Inc.* v. *Colossale Concrete, Inc.,* 207 Conn. 468, 473, 542 A.2d 692 (1988); *Plikus* v. *Plikus,* 26 Conn. App. 174, 177, 599 A.2d 392 (1991).

In its memorandum of decision, the trial court stated that it did not find any evidence that Keith S. Mahler controlled Edgecliffe and Progress, or that he was responsible for the plaintiff's being denied the sum it was due from Progress. The court also found no evidence that Jane Z. Mahler either knew or was aware that the transfer of property to her was for the purpose of defrauding the plaintiff. Our review of the record, however, discloses that the trial court improperly failed to find the following salient and uncontroverted facts. Keith S. Mahler controlled both Progress and Edgecliffe. To enable Jane Z. Mahler to obtain the funds to purchase the lot, Keith S. Mahler made a fraudulent affidavit in March, 1989, in which he stated that no improvements had been made to the property, when in fact he and his wife had paid Progress $258,548 for such improvements. Jane Z. Mahler gave a $352,000

mortgage on the property to a Waterbury lending institution, for which she and Keith Z. Mahler signed a promissory note. The Mahlers together then paid Edgecliffe $91,000 for the lot, although Jane Z. Mahler alone took title. Although it is for the trier of fact to weigh and determine what, if any, credibility to give to the evidence before it; *Inland Wetlands & Watercourses Agency* v. *Landmark Investment Group, Inc.*, 218 Conn. 703, 708, 590 A.2d 968 (1991); *Rostain* v. *Rostain,* 214 Conn. 713, 716, 573 A.2d 710 (1990); here, the undisputed nature of the evidence, which included the affidavit and promissory note, and the deed to the property, was such that the trial court reasonably and logically could not fail to find these facts.

The plaintiff next claims that the trial court improperly failed to find that the admission of intent to defraud, as contained in the defendants' answer to paragraph eleven of the fifth count in the plaintiff's complaint, is binding upon all the defendants, including Jane Z. Mahler.[2] We agree.

An admission in a defendant's answer to an allegation in a complaint is binding as a judicial admission. *Franchi* v. *Farmholme, Inc.*, 191 Conn. 201, 214, 464 A.2d 35 (1983); *Lutkus* v. *Kelly,* 170 Conn. 252, 257, 365 A.2d 816 (1976); *Bridgeport* v. *Stratford,* 142 Conn. 634, 646, 116 A.2d 508 (1955). A party is bound by a judicial admission unless the court, in the exercise of its discretion, permits the admission to be withdrawn,

---

[2] Paragraph eleven in the fifth count of the complaint states: "On March 10, 1989, Edgecliffe Lawn Development Corp. transferred to the Defendant, Jane Z. Mahler, the real property described in Exhibit A, attached hereto, without adequate consideration and with the intent to prevent it from being taken by legal process and with the intent of thereby defrauding the Plaintiff and preventing it from securing payment of its indebtedness."

The defendants' answer to this allegation states: "As to paragraph 11 the Defendants admit all of the paragraph except 'without adequate consideration' which is hereby denied."

explained or modified. *Hirsch* v. *Thrall,* 148 Conn. 202, 206–207, 169 A.2d 271 (1961); *Bochicchio* v. *Petrocelli,* 126 Conn. 336, 339, 11 A.2d 356 (1940); accord *State* v. *Rodriguez,* 180 Conn. 382, 395–96, 429 A.2d 919 (1980).

The plaintiff claims that the admission in the defendants' answer to paragraph eleven is binding on Jane Z. Mahler and thus establishes that she intended to defraud the plaintiff of its indebtedness. In response, the defendants assert that paragraph eleven does not allege that Jane Z. Mahler took part in the fraud. They also contend she was not involved in the fraud because the trial court found that she had paid adequate consideration as part of the transaction.

Neither of the defendants' arguments, however, has merit. First, paragraph eleven expressly names Jane Z. Mahler as a participant in the conveyance. Second, the defendants' counsel conceded at oral argument, and the record clearly shows, that the trial court did not allow modification or withdrawal of the admission. Because it is settled law that an admission in an answer is binding on a defendant; *Franchi* v. *Farmholme, Inc.,* supra; *Lutkus* v. *Kelly,* supra; *Bridgeport* v. *Stratford,* supra; we conclude that the trial court improperly failed to find that the admission of intent to defraud by Edgecliffe is binding on all the defendants, including Jane Z. Mahler, who therefore knew of the fraud and acquiesced in it.

Because all the defendants are bound by their admission of intent to defraud the plaintiff, the trial court also should have pierced the corporate veils of Progress and Edgecliffe to determine if Keith S. Mahler should bear any personal liability for his actions as a corporate officer. In its memorandum of decision, however, the trial court reasoned that piercing the corporate veil was improper because it did not find any evidence that Keith S. Mahler intended to defraud the plaintiff.

To hold a corporate officer personally liable for wrongdoing, there must be a sufficient factual basis for a court to pierce the corporate veil. *Angelo Tomasso, Inc.* v. *Armor Construction & Paving, Inc.,* 187 Conn. 544, 561, 447 A.2d 406 (1982); *Skyler Ltd. Partnership* v. *S.P. Douthett & Co.,* 18 Conn. App. 245, 253, 557 A.2d 927 (1989); *Schmidt* v. *Yardney Electric Corporation,* 4 Conn. App. 69, 73, 492 A.2d 512 (1985). The piercing of the corporate veil is equitable in nature. *Angelo Tomasso, Inc.* v. *Armor Construction & Paving, Inc.,* supra, 555. " ' "When the statutory privilege of doing business in the corporate form is employed as a cloak for the evasion of obligations, as a mask behind which to do injustice, or invoked to subvert equity, the separate personality of the corporation will be disregarded." . . .' " (Citation omitted.) *Falcone* v. *Night Watchman, Inc.,* 11 Conn. App. 218, 220, 526 A.2d 550 (1987), quoting *DeMartino* v. *Monroe Little League, Inc.,* 192 Conn. 271, 275, 471 A.2d 638 (1984).

A court may pierce the corporate veil " ' "only under exceptional circumstances, for example, where the corporation is a mere shell, serving no legitimate purpose, and used primarily as an intermediary to perpetuate fraud or promote injustice." ' " *SFA Folio Collections, Inc.* v. *Bannon,* 217 Conn. 220, 230, 585 A.2d 666, cert. denied, U.S. , 111 S. Ct. 2839, 115 L. Ed. 2d 1008 (1991), quoting *Angelo Tomasso, Inc.* v. *Armor Construction & Paving, Inc.,* supra, 557. The corporate veil will be pierced when "the corporate entity has been so controlled and dominated that justice requires liability to be imposed on the real actor." *Saphir* v. *Neustadt,* 177 Conn. 191, 209, 413 A.2d 843 (1979); *Falcone* v. *Night Watchman, Inc.,* supra.

Under Connecticut law, the corporate veil may be pierced under either the "instrumentality" or "identity" rules. Under the instrumentality rule, in any case but that of express agency, proof of three elements is

required: " '(1) Control, not mere majority or complete stock control, but complete domination, not only of finances but of policy and business practice in respect to the transaction attacked so that the corporate entity as to this transaction had at the time no separate mind, will or existence of its own; (2) that such control must have been used by the defendant to commit fraud or wrong, to perpetrate the violation of a statutory or other positive legal duty, or a dishonest or unjust act in contravention of plaintiff's legal rights; and (3) that the aforesaid control and breach of duty must proximately cause the injury or unjust loss complained of." *Saphir* v. *Neustadt*, supra, 10; *Falcone* v. *Night Watchman, Inc.*, supra, 220 n.2.

Under the "identity" rule, as stated in *Zaist* v. *Olson*, 154 Conn. 563, 576, 227 A.2d 562 (1967), the corporate veil may be pierced when the plaintiff shows " ' "such a unity of interest and ownership that the independence of the corporation had in effect ceased or had never begun, [and that] an adherence to the fiction of separate identity would serve only to defeat justice and equity by permitting the economic entity to escape liability arising out of an operation conducted by one corporation for the benefit of the whole enterprise." . . .' " (Citations omitted.) *Falcone* v. *Night Watchman, Inc.*, supra, 221. A key factor in determining whether the corporate shield should be disregarded is the degree of control or influence exercised over the corporation by the individual sought to be held liable. *Falcone* v. *Night Watchman, Inc.*, supra. The identity rule "primarily applies to prevent injustice in the situation where two corporate entities are, in reality, controlled as one enterprise because of the existence of common owners, officers, directors or shareholders and because of the lack of observance of corporate formalities between the two entities." *Angelo Tomasso, Inc.* v. *Armor Construction & Paving, Inc.*, supra, 560.

Here, the trial court declined to pierce the corporate veils of Progress and Edgecliffe because it found no evidence that these corporations were mere instrumentalities of Keith S. Mahler or that he controlled their business practices as one enterprise. In fact, the record clearly discloses that Keith S. Mahler did control the business affairs of both Progress and Edgecliffe with respect to the debt Progress owed the plaintiff and Edgecliffe's transfer of the Waterbury lot to Jane Z. Mahler. Neither corporation had a separate mind, will or existence of its own. They shared the same officers, directors and shareholders, and conducted joint meetings at which no minutes were taken and only Keith S. Mahler was present. It also is clear from the record that Keith S. Mahler used these corporations as intermediaries in breaching his duty to the plaintiff, thereby proximately causing its injury. In light of these facts, it is manifest that the trial court should have pierced the corporate veils of Progress and Edgecliffe under either the "instrumentality" or "identity" rules.

On the basis of our review of the record, we conclude that the trial court failed to make certain findings of fact that should have been made, and that it should have found the admission of intent to defraud in the defendants' answer binding on all the defendants. The trial court also should have pierced the corporate veils of Progress and Edgecliffe. Because of the sparse record, however, which includes the parties' briefs, we decline to reach the claims involving tortious interference and fraudulent conveyance. These claims are to be resolved at a hearing to be conducted by the trial court upon remand.

The judgment against Progress and Edgecliffe each in the amount of $9427.41 and against Edgecliffe in the amount of $4125 is affirmed. The judgment is reversed only with respect to Keith S. Mahler and Jane Z. Mahler and the case is remanded for further

proceedings to determine whether Keith S. Mahler tortiously interfered with the plaintiff's contractual relations with Progress, and whether Edgecliffe's conveyance to Jane Z. Mahler should be set aside.

In this opinion the other judges concurred.