KLM INDUSTRIES, INC. *v.* MICHAEL TYLUTKI ET AL.
(AC 22308)

Foti, Mihalakos and Bishop, Js.

Argued October 25, 2002—officially released February 11, 2003

*Nathalie Feola-Guerrieri*, with whom, on the brief, was *Daniel Shepro*, for the appellant-cross appellee (defendant John Voloshin).

*Edward B. Bradley*, with whom was *Robert A. Ziegler*, for the appellee-cross appellant (plaintiff).

*Opinion*

BISHOP, J. The defendant John Voloshin[1] appeals from the judgment of the trial court holding him personally liable on a debt incurred by the defendant Home Investment Corporation, LLC[2] (Home Investment), to

---

[1] The plaintiff, KLM Industries, Inc., instituted this action against four defendants, Michael Tylutki, Rebecca Tylutki, People's Bank and Home Investment Corporation. Thereafter, the action was withdrawn as to the Tylutkis and People's Bank. The plaintiff then cited in John Voloshin as a party defendant. Voloshin is the only defendant to appeal.

[2] The appellation "Home Investment Corporation, LLC," suggesting that the defendant is both a corporation and a limited liability company is incorrect. Home Investment Corporation (Home Investment) was sued and appeared as a corporation. At some point pretrial, counsel for the plaintiff filed a pleading in which "LLC" was added to Home Investment's name. This is apparently incorrect. From the trial record, it is clear that there is no dispute that Home Investment is a closely held stock corporation and not a limited liability company. The confusion as to its legal status appears in the court's memorandum of decision in which the court refers to Home Investment as a limited liability company, but then makes findings as to its stock ownership. This misapprehension does not, however, prevent our determination of the issues on appeal. Although we disagree with the court's decision to pierce the corporate veil, we agree with the court that the determination of whether to pierce the corporate veil of a stock corporation or to disregard the protections afforded a limited liability company requires the same analysis. Additionally, it is clear from a review of counsels' briefs that they treated Home Investment as a stock corporation. We do as well.

the plaintiff, KLM Industries, Inc., and ruling that the plaintiff was a proper party to seek payment of the debt. The plaintiff cross appeals, claiming that the court improperly ruled in favor of Voloshin on the third and sixth counts of the complaint, which alleged that Voloshin had forged or knowingly benefited from a forged lien waiver. We reverse in part and affirm in part the judgment of the trial court.

The plaintiff initiated the underlying action to recover for materials furnished to Home Investment in connection with the construction of a single-family dwelling in Milford. Two wholly owned subsidiaries of the plaintiff, Stevenson Lumber Company, Inc. (Stevenson Lumber), and Stevenson Millwork, Inc. (Stevenson Millwork), furnished the materials, which were valued at approximately $32,340, on or about June 30, 1997.

The plaintiff brought a six count complaint against Home Investment and later cited in its president, Voloshin, as a defendant. Counts one, two and three allege, respectively, (1) an amount owed by Home Investment on account to the plaintiff, (2) unjust enrichment on the part of Home Investment and (3) that Home Investment forged a lien waiver or benefited from its knowledge that it had been forged. Counts four through six mirror the first three counts, but are directed against Voloshin personally.

After trial, the court permitted the plaintiff to amend its complaint to conform to the evidence that the amounts owed to Stevenson Lumber and Stevenson Millwork had been validly assigned to the plaintiff, and in its memorandum of decision, the court credited the claimed assignment. The court found that the sum of $32,340 was due from Home Investment to the plaintiff with respect to counts one and two. Additionally, the court found for the plaintiff with respect to counts four and five, i.e., that Voloshin is personally liable on the

debt. The court found for Voloshin and Home Investment on counts three and six, concluding that neither Voloshin nor Home Investment is liable on the alleged forged lien waiver claim. This appeal followed.

## I

## VOLOSHIN'S APPEAL

Voloshin first claims that the court improperly concluded that he was personally liable for Home Investment's debt. We agree and reverse the court's judgment as to counts four and five.

Our standard of review when a court draws legal implications from factual findings "involves a two part function: where the legal conclusions of the court are challenged, we must determine whether they are legally and logically correct and whether they find support in the facts set out in the memorandum of decision; where the factual basis of the court's decision is challenged we must determine whether the facts set out in the memorandum of decision are supported by the evidence or whether, in light of the evidence and the pleadings in the whole record, those facts are clearly erroneous." *Pandolphe's Auto Parts, Inc.* v. *Manchester*, 181 Conn. 217, 221–22, 435 A.2d 24 (1980). We employ both standards of review because the appeal implicates the court's factual findings as well as the legal conclusions drawn from them.

The court found the following facts. Stevenson Lumber and Stevenson Millwork furnished building materials worth $32,340 to Home Investment to be used in the construction of a dwelling. The finished home was sold by warranty deed for $288,000 by Home Investment. At all times, Home Investment acted through Voloshin, its president and sole shareholder. Voloshin personally arranged for the purchase of goods and materials, and signed documents on behalf of Home Invest-

ment. He exercised complete control over the management and finances of the corporation, and was responsible for the hiring and supervising of all employees and independent contractors. During the year in which the debt at issue became due, substantial sums of money were withdrawn from Home Investment for the benefit of Voloshin and members of his family. In December, 1997, Voloshin issued a check to Stevenson Lumber in the amount of $35,911, which was returned due to insufficient funds.

On the basis of those factual findings, the court concluded that Voloshin was personally liable to the plaintiff. The court ascribed personal liability to Voloshin by piercing the corporate veil of Home Investment.

General Statutes § 33-673 (b) acts to exempt shareholders of a corporation from personal liability and provides in relevant part that "a shareholder of a corporation is not personally liable for the acts or debts of the corporation except that he may become personally liable by reason of his own acts or conduct." That statutory cloak protects those who own a corporation in all but the exceptional circumstance in which an individual may be held personally liable for the ostensible debts of the corporation.

"A court may pierce the corporate veil only under exceptional circumstances . . . ." (Internal quotation marks omitted.) *United Electrical Contractors, Inc.* v. *Progress Builders, Inc.*, 26 Conn. App. 749, 755, 603 A.2d 1190 (1992). In such unusual circumstances, "[c]ourts will disregard the fiction of separate legal entity when a corporation is a mere instrumentality or agent of another corporation or individual owning all or most of its stock. . . . Under such circumstances the general rule, which recognizes the individuality of corporate entities and the independent character of each in respect to their corporate transactions, and

the obligations incurred by each in the course of such transactions, will be disregarded, where . . . the interests of justice and righteous dealing so demand." (Internal quotation marks omitted.) *Hersey* v. *Lonrho, Inc.*, 73 Conn. App. 78, 86, 807 A.2d 1009 (2002). The "issue of whether the corporate veil [should be] pierced presents a question of fact . . . ." (Citations omitted; internal quotation marks omitted.) *Litchfield Asset Management Corp.* v. *Howell,* 70 Conn. App. 133, 148, 799 A.2d 298, cert. denied, 261 Conn. 91, 806 A.2d 49 (2002).

"When determining whether piercing the corporate veil is proper, our Supreme Court has endorsed two tests: the instrumentality test and the identity test. The instrumentality rule requires, in any case but an express agency, proof of three elements: (1) Control, not mere majority or complete stock control, but complete domination, not only of finances but of policy and business practice in respect to the transaction attacked so that the corporate entity as to this transaction had at the time no separate mind, will or existence of its own; (2) that such control must have been used by the defendant to commit fraud or wrong, to perpetrate the violation of a statutory or other positive legal duty, or a dishonest or unjust act in contravention of plaintiff's legal rights; and (3) that the aforesaid control and breach of duty must proximately cause the injury or unjust loss complained of." *Hersey* v. *Lonrho, Inc.*, supra, 73 Conn. App. 87.

"The identity rule has been stated as follows: If a plaintiff can show that there was such a unity of interest and ownership that the independence of the corporations had in effect ceased or had never begun, an adherence to the fiction of separate identity would serve only to defeat justice and equity by permitting the economic entity to escape liability arising out of an operation conducted by one corporation for the benefit of the

whole enterprise. . . . The concept of piercing the corporate veil is equitable in nature and courts should pierce the corporate veil only under exceptional circumstances." (Internal quotation marks omitted.) Id.[3]

The court pierced Home Investment's corporate veil and found that Voloshin was personally liable to the plaintiff on the ground that Home Investment merely was his instrumentality. In making that determination, the court concluded that Voloshin exercised complete control over Home Investment sufficient to satisfy the first prong of the test. The court found that Voloshin exercised that control in such a way as to commit a fraud or wrong, namely, that he caused the finances of Home Investment to be depleted while the debt to the plaintiff remained unpaid. The court also found Voloshin liable under the identity rule and stated that "to adhere to the fiction of a separate legal existence between Home Investment and John Voloshin, would serve to defeat justice and equity, and would allow John Voloshin to avoid payment of a lawful debt due to the plaintiff, KLM Industries, Inc." Although one might reasonably conclude that Voloshin misapplied company assets to his personal use and inappropriately handled company finances, we are not persuaded that his actions warrant application of the common-law exception to the statutory protection against personal liability.

Cases in which the corporate veil has been pierced are factually dissimilar to the present case. In *Davenport* v. *Quinn*, 53 Conn. App. 282, 730 A.2d 1184 (1999), the trial court pierced the corporate veil of the defen-

---

[3] Although the identity rule primarily applies to prevent injustice where two corporations are controlled as one enterprise; *Angelo Tomasso, Inc.* v. *Armor Construction & Paving, Inc.*, 187 Conn. 544, 560, 447 A.2d 406 (1982); it has been applied to hold an individual liable for a corporate obligation. See *Saphir* v. *Neustadt*, 177 Conn. 191, 209–10, 413 A.2d 843 (1979); *Zaist* v. *Olson*, 154 Conn. 563, 575–78, 227 A.2d 552 (1967).

dant's corporation because the defendant was the sole shareholder, director and officer of several corporations, did not maintain separate bank accounts for each corporation, used one corporation to pay off the debts of the others and depleted corporate resources to avoid a default judgment. The court found that such "alter ego" status warranted application of the doctrine. Id., 301–303. In *Toshiba America Medical Systems, Inc.* v. *Mobile Medical Systems, Inc.*, 53 Conn. App. 484, 730 A.2d 1219, cert. denied, 249 Conn. 930, 733 A.2d 851 (1999), this court held that piercing the corporate veil was proper because the defendant, the sole shareholder of two corporations, transferred more than $1.1 million from one of his corporations to another to avoid paying the plaintiff, held no corporate meetings to approve such transactions, did not file any tax returns or other documentary proof with the secretary of the state as to corporate existence, had no employees and had no equipment or property other than an automobile for the defendant's use. Id., 488–92. The defendant used corporate funds to pay his personal income tax and permitted his son to write checks on the corporate account. Id., 491.

Unlike the defendants in *Davenport* and *Toshiba America Medical Systems, Inc.*, the defendant in this case, Voloshin, was not the sole shareholder and, in fact, held no corporate shares. In that regard, the court's factual finding to the contrary clearly is improper. It appears from the record that it was undisputed at trial that Voloshin's spouse, Linda, was the sole shareholder and director of Home Investment. Additionally, our review of the record suggests that Voloshin exercised no more control over Home Investment than that of any president of a closely held corporation. Contrary to the court's findings, the record demonstrates that the Voloshins treated the company as a distinct entity. For example, there was evidence that the Voloshins

had informal discussions concerning company activities from time to time, and that Linda Voloshin consented to corporate actions for each year from 1995 to 1997. Also, Home Investment maintained its returned checks and statements, filed and maintained corporate tax returns, and filed its biannual reports. Evidence that the company adhered to those practices is inconsistent with a finding that the company was the mere instrumentality of Voloshin. See *Litchfield Asset Management Corp.* v. *Howell*, supra, 70 Conn. App. 152 (adherence to corporate formalities militates against finding of control). The fact that Voloshin acted on behalf of the company is no more than a reflection of the reality that all corporations act through individuals. It is axiomatic that while such an entity has a distinct legal life, it can act only through individuals. Finally, to the extent that the court suggested that piercing the corporate veil also was justified under the identity theory, we hold that the evidence in this case does not support a finding that the unity of interest and ownership between Voloshin and the company was such that the company ceased to exist or had never begun, or that adherence to the notion of a separate identity would serve only to defeat justice and equity. See *Hersey* v. *Lonrho, Inc.*, supra, 73 Conn. App. 87. Here, the court's conclusions that Voloshin's actions evinced such pervasive control as to negate the separate existence of the company is unsupported by the record. Accordingly, we reverse the judgment of the trial court with respect to counts four and five.

## II

Voloshin next claims that the court improperly found that the plaintiff satisfied its burden of proof that it was the proper party to seek payment for the materials sold by Stevenson Lumber. Specifically, he claims that because the building materials had been sold to Home Investment, not by the plaintiff, but by Stevenson Lum-

ber, as alleged in the complaint, the plaintiff failed to prove that Home Investment owed it moneys. As previously stated, after trial, the court permitted the plaintiff to amend its complaint to allege that the right to seek payment for the materials provided by Stevenson Lumber had been assigned to the plaintiff. Because we have determined that the judgment against Voloshin, the only defendant on this appeal, must be reversed for other reasons, we need not reach Voloshin's claim.

### III

### PLAINTIFF'S CROSS APPEAL

In its cross appeal, the plaintiff claims that the court improperly found that Voloshin was not liable to the plaintiff on the forged lien waiver. We are not persuaded.

Count six of the plaintiff's amended complaint sought recovery on the ground that Voloshin had signed, or caused to be signed, a mechanic's lien waiver on behalf of Stevenson Lumber, which enabled Home Investment to close on the property at issue. At trial, there was testimony that the waiver was signed with the name "Steve Baldino," a name purportedly unknown to any of the parties. Voloshin testified that although he could not recall the precise circumstances of the lien waiver, he believed the signature had been obtained by the project superintendent and that the waiver had been delivered to him with the name "Steve Baldino" already affixed. The court was entitled to credit or discredit any or all of the testimony regarding the circumstances in which the lien waiver had been signed and utilized.

The court's factual findings are binding on this court unless they are clearly improper in light of the evidence and the pleadings in the record as a whole. "We cannot retry the facts or pass on the credibility of the witnesses. . . . A finding of fact is clearly erroneous when there

is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed . . . ." (Internal quotation marks omitted.) *Putnam Park Associates* v. *Fahnestock & Co.*, 73 Conn. App. 1, 11–12, 807 A.2d 991 (2002).

Our review of the record leads us to conclude that the court's finding was not clearly improper. We do not disagree with the court's conclusion that there is insufficient evidence that Voloshin forged or knowingly benefited from a forgery of the lien waiver in question.

On the defendant John Voloshin's appeal, the judgment is reversed as to counts four and five and the case is remanded with direction to render judgment in favor of John Voloshin on those counts. On the plaintiff's cross appeal, the judgment is affirmed.

In this opinion the other judges concurred.